# United States Court of Appeals for the Fifth Circuit

United States Courts
Southern District of Texas
FILED
*October 24, 2022*
Nathan Ochsner, Clerk of Court

United States Court of Appeals
Fifth Circuit
**FILED**
September 2, 2022
Lyle W. Cayce
Clerk

No. 21-40784

ZANE SWEETIN; REBECCA FOSTER, *as personal representative and next friend of* A.S., *a minor, in place and stead of* MICHAEL STEFEK, *deceased*,

*Plaintiffs—Appellants*,

versus

CITY OF TEXAS CITY, TEXAS; WENDELL WYLIE,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:19-CV-233

---

Before STEWART, ELROD, and GRAVES, *Circuit Judges*.

JENNIFER WALKER ELROD, *Circuit Judge*:

Texas City's "permit officer" handles applications for ambulance permits for the City. One day, he spotted an ambulance without a permit. He knew he was powerless to issue citations to the drivers himself, so he summoned someone who could (the Fire Marshal). While waiting for the Fire Marshal to show up, the officer repeatedly told the ambulance drivers that they were detained, that they could not leave, and that they *must* stay. He did not have that power, but he did it anyway. The Fire Marshal showed up about thirty minutes later and issued them citations. The ambulance

No. 21-40784

drivers sued, claiming this violated their Fourth Amendment rights. We agree. And because the officer acted beyond the scope of his discretionary duties as "permit officer," he is not entitled to qualified immunity. But the claim against the City fails because the officer did not have final policymaking authority. Thus, we AFFIRM in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.

I.

Wendell Wylie is a captain in the Texas City Fire Department. The Fire Marshal authorized him to serve as the City's "EMS Administrator," to handle the permitting of private-sector, non-emergency ambulances. Wearing this hat, he can investigate whether permit-applicants meet state and local ambulance requirements. He is also given the authority to "[d]evelop such reasonable regulations subject to the approval of the City Commission as may be necessary for the proper enforcement and implementation" of the City's rules about ambulance services.

Zane Sweetin and Michael Stefek worked for Windsor as emergency medical technicians. They drove their ambulance to Texas City for a routine pick-up at a nursing home. Unbeknownst to them, Windsor no longer had a permit, so driving into the City for this routine pick-up would violate a Texas City ordinance. Sweetin and Stefek parked the ambulance outside the nursing home and went inside to get the patient. Wylie was driving by in his Fire Department vehicle when he spotted the Windsor ambulance parked outside. He knew Windsor was permitless, so he pulled in to "investigate," which just meant snapping a few pictures of the ambulance.

Around this time, Sweetin and Stefek came out with their patient. Once the patient was in the ambulance, Wylie pulled up and asked Sweetin and Stefek some questions about why they were there and where they were headed. They declined to answer, citing the patient's confidentiality. Then

No. 21-40784

Wylie said he would let them complete their trip before talking with them. Off they went to drop the patient off at a dialysis clinic in La Marque. During the drive, Wylie called the Fire Marshal and asked him to come issue citations to Sweetin and Stefek. Sweetin and Stefek parked under the awning outside the entrance of the clinic; Wylie backed into a spot near the front of the ambulance.

The Fire Marshal had not yet arrived when Sweetin and Stefek finished their drop-off. As they loaded the stretcher back into the ambulance, Wylie approached them and said: "You are detained. You are not allowed to leave. You must wait right here." This struck Sweetin and Stefek as bizarre—a man in a paramedic's uniform, driving a Texas City Fire Department vehicle, detaining them in a city other than Texas City. They sat in their ambulance and discussed whether they should just drive off. On the one hand, they knew Wylie was not a police officer. On the other, they did not know whether he nevertheless had the authority to detain them.

They ended up waiting around and submitting to Wylie's apparent show of authority. Sweetin finished some of the paperwork for the transfer they had just completed. Stefek called their supervisor at Windsor to try and talk with Wylie, but Wylie told them to stay in the ambulance and wait for the Fire Marshal. Sweetin recalls that Wylie was "rude" and told them to "get the F back into the vehicle." They waited there until the Fire Marshal showed up. He asked them a few questions, gave them their citations, and they went on with their work day.

Wylie knew he did not have the authority to detain Sweetin and Stefek. He called the Fire Marshal because he did not even have the power to issue them a citation. But he maintains that they were free to leave whenever they wanted. By his telling, he identified himself as the EMS

3

No. 21-40784

supervisor, sat in his vehicle while they waited, and never displayed a weapon or used any physical force.

Subsequently, Sweetin and Stefek sued Wylie (in his individual capacity) and the City under 42 U.S.C. § 1983, alleging that they were unreasonably seized in violation of the Fourth Amendment. After discovery, Wylie and the City moved for summary judgment, which the district court granted.

The court held that even if there was a genuine dispute of material fact about whether Wylie unconstitutionally seized Sweetin and Stefek, the law was not clearly established enough to survive qualified immunity. And as for the City, the court held that under Texas law, Wylie did not have "final policymaking authority," so the City could not be held liable for his actions. Sweetin and Stefek appealed.

II.

We review the grant of summary judgment *de novo*. *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017). Summary judgment is proper if the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (citing Fed. R. Civ. P. 56(a)). A fact is "material" if resolving it one way or another would change the outcome of the lawsuit. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). A genuine dispute over that fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357–58 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). We view the evidence in the light most favorable to the nonmovant and resolve factual controversies in the nonmovant's favor. *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

No. 21-40784

### A.

Qualified immunity protects government officials acting within their authority from individual liability "when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 412 (5th Cir. 2011) (en banc). Once a government official establishes that his conduct was within the scope of his discretionary authority, it is up to the plaintiff to show that (1) the official "violated a statutory or constitutional right," and (2) the right was "clearly established at the time." *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). The first part of the rule often gets overlooked: To even get into the qualified-immunity framework, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019).

That oft-overlooked threshold requirement is dispositive here. To figure out whether an official was acting within the scope of his duties, we look to state law. *See id.* at 318–19; *see also Cummings v. Davenport*, 906 F.3d 934, 943 (11th Cir. 2018) (W. Pryor, J.) (relying on state law to define the scope of discretionary authority).

Wylie was not acting within the scope of his discretionary authority because state law does not give a permit officer the authority to conduct stops of any kind. *Cherry Knoll*, 922 F.3d at 318–19 (looking to how state law defines the duties of an official to determine the scope of his discretionary duties). In fact, it says the contrary: Texas law criminalizes a public official's act of "intentionally subject[ing]" a person to "seizure" "that he knows is unlawful." Tex. Penal Code § 39.03. Wylie intentionally subjected Sweetin and Stefek to seizure, and Wylie admits he knew he had no authority to stop

5

them. For these reasons, we hold that Wylie is not entitled to qualified immunity.

B.

While Sweetin and Stefek prevail on their first claim, they fail on the second. The City cannot be held liable under 42 U.S.C. § 1983 because Wylie does not have any final policymaking authority. Section 1983 allows suits against "person[s]" for violating federal rights. 42 U.S.C. § 1983. That term includes municipalities like Texas City. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.54 (1978). But a city cannot be held liable under § 1983 on a *respondeat superior* theory of liability. *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018). Rather, a city can be liable only if one of its policies or customs caused the injury. *Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021) (citing *Monell*, 436 U.S. at 694). For a city to be liable under § 1983, the plaintiff must show "(1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose moving force is the policy or custom." *Horvath v. City of Leander*, 946 F.3d 787, 793 (5th Cir. 2020).

And there are three ways to show an "official policy": (1) "written policy statements, ordinances, or regulations"; (2) a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents" the city's policy; or (3) under "rare circumstances," a single act can be considered a policy if done by an official or entity with "final policymaking authority." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (citations and quotations omitted). Sweetin and Stefek do not try to establish either of the first two, but instead argue that Wylie had "final policymaking authority."

Whether Wylie had final policymaking authority is a question of state law. *Id.* at 215. A final policymaker is one that has "the responsibility for making law or setting policy in any given area of a local government's

No. 21-40784

business," *Robinson v. Hunt County*, 921 F.3d 440, 448 (5th Cir. 2019) (quotation omitted)—one that "decide[s] the goals for a particular city function and devise[s] the means of achieving those goals," *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). Where state law does not show that a certain official is a final policymaker, there may still be an avenue to liability if the final policymaker either expressly or impliedly delegated final policymaking authority to the official. *Webb*, 925 F.3d at 215. To be sure, not every delegation of authority is one of *policymaking* authority, and the court has "long recognized that the discretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Valle v. City of Houston*, 613 F.3d 536, 542–43 (5th Cir. 2010) (quotation omitted); *see Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc) ("Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance.").

Texas City is a home-rule city named after the State of Texas. *See* Tex. Local Gov't Code § 1.005; *Powell v. City of Houston*, 628 S.W.3d 838, 842 (Tex. 2021) ("Home-rule cities may exercise all powers not denied to them by the Constitution or state law."). Texas City's charter makes the City Commission its governing body, giving it the power to "exercise, or cause to be exercised, all powers conferred upon the city by [the] Charter or by applicable law." Tex. City Charter art II, § 1. That includes the power to enact city ordinances. *Id.* art. III, § 6. One such ordinance, relating to the regulation of non-emergency ambulance services, creates the "permit officer" position, which has a slew of enumerated duties pertaining to granting or denying applications for ambulance permits. Tex. City Ordinance § 35.10. Subsection (H) of that ordinance entrusts the permit officer with the duty to "[d]evelop such reasonable regulations subject to the approval of the City Commission as may be necessary for the proper

7

enforcement and implementation of the provisions of this subchapter." *Id.* § 35.10(H).

Sweetin and Stefek argue that this subsection is a delegation of final policymaking authority. But as is clear from the text of that subsection, any authority the permit officer is given is "subject to the approval of the City Commission." *Id.* Thus, any authority Wylie has is not "final." *Webb*, 925 F.3d at 214 (5th Cir. 2019).

Furthermore, the fact that Wylie is "responsible for the everyday operations of the EMS Department" is immaterial because such a responsibility only indicates decision-making authority rather than policymaking authority. *See Webb*, 925 F.3d at 214; *Valle*, 613 F.3d at 542–43; *Bennett*, 728 F.2d at 769. Consequently, we hold that Wylie does not have any final policymaking authority, either by delegation or otherwise. And thus, the City cannot be held liable.

\* \* \*

Accordingly, we AFFIRM in part, REVERSE in part, and REMAND to the district court for further proceedings consistent with this opinion.